*107 LIU, J.,
Concurring and Dissenting.—I write separately to address defendant’s claim that the prosecutor used a peremptory strike against Prospective Juror No. 20 in violation of Batson v. Kentucky (1986) 476 U.S. 79 [90 L.Ed.2d 69, 106 S.Ct. 1712] and People v. Wheeler (1978) 22 Cal.3d 258 [148 Cal.Rptr. 890, 583 P.2d 748]. I agree that the claim must be denied, but because the trial court’s ruling was unaccompanied by any findings or analysis, I would not accord deference to the ruling in affirming it. (See People v. Mai (2013) 57 Cal.4th 986, 1060-1061 [161 Cal.Rptr.3d 1, 305 P.3d 1175] (conc. opn. of Liu, J.); People v. Williams (2013) 56 Cal.4th 630, 715 [156 Cal.Rptr.3d 214, 299 P.3d 1185] (dis. opn. of Liu, J.).)
Prospective Juror No. 20, a 44-year-old African-American woman, was called to the jury box in the first group of 18 prospective jurors, and she was the first juror peremptorily struck by the prosecutor. Defendant objected, and the trial court asked the prosecutor to explain the challenge, thus impliedly finding a prima facie case of purposeful racial discrimination. (People v. Lewis (2008) 43 Cal.4th 415, 470 [75 Cal.Rptr.3d 588, 181 P.3d 947].) The prosecutor responded as follows: “She stated quite clearly on her jury questionnaire that she was opposed to the death penalty. She checked the box that says oppose. She stated in her narrative answer, I oppose the death penalty because I believe many innocent people have been put to death wrongfully. And in answer to the court’s follow-up question, she said possibly she could vote for the death penalty. She added that life is a more severe punishment. She sat on a previous jury in a different murder case and it was a hung jury. This was some 15 years ago. I have an absolute policy of getting rid of people whose only jury experience resulted in a hung jury.” Defense counsel argued that the prospective juror had served not on a hung jury, but on a jury that had failed to complete deliberations because several jurors had become ill. The trial court denied the Batson motion without any findings or analysis, stating only: “It’s a proper use of a peremptory challenge.”
This record satisfies my colleagues that the trial court fulfilled “its duty to make a sincere, meaningful and reasoned evaluation” of the prosecutor’s proffered justifications and did not “simply accept[] the . . . justifications ‘at face value.’ ” (Maj. opn., ante, at p. 76.) But the trial court’s unexplained ruling leaves us in the dark as to what evaluation the trial court actually made. To conclude that deference is unwarranted is not to conclude that the trial court’s ruling was wrong or that the trial court did not actually evaluate the reasons given for a strike. It is to conclude that an appellate court, when faced with an unexplained ruling, does not know what went into the trial court’s judgment and thus has nothing to which it can defer. (See U.S. v. Rutledge (7th Cir. 2011) 648 F.3d 555, 559 [“if there is nothing in the record reflecting the trial court’s decision, then there is nothing to which we can defer”].) Filling the gap with presumptions, as the court routinely does, falls *108 short of the careful inquiry required by high court precedent (see Snyder v. Louisiana (2008) 552 U.S. 472 [170 L.Ed.2d 175, 128 S.Ct. 1203]; Miller-El v. Dretke (2005) 545 U.S. 231 [162 L.Ed.2d 196, 125 S.Ct. 2317]) and all but “dispense^] with appellate review in such cases since it is so easy to rationalize a silent record with a cacophony of presumptions” (People v. Mai, supra, 57 Cal.4th at p. 1062 (conc. opn. of Liu, J.)).
In the present case, I would affirm the trial court’s Batson ruling based on an independent review of the record. The prosecutor’s reliance on Prospective Juror No. 20’s death penalty views is firmly substantiated by the record. The juror checked the box on her questionnaire indicating she opposed the death penalty; she expressed the view that life in prison was worse than death; and she said innocent people had been wrongly put to death. In light of these facts, defendant has not shown it is more likely than not that the prosecutor’s concern was pretextual. Ultimately, no seated juror expressed similar views on the juror questionnaire or during voir dire.
I would hesitate, however, to rely on the prosecutor’s assertion that “I have an absolute policy of getting rid of people whose only jury experience resulted in a hung jury.” It is hard to know what to make of such an unqualified and single-minded statement before the prosecutor had a chance to strike or accept other jurors who might have fit the description. Without some indication from the trial court as to why such a sweeping statement appeared credible, I would not put much weight on the mere assertion itself.
The record in this case bears out the potential hazard of crediting such an assertion. Two seated jurors’ sole experience on a jury had resulted in a hung jury. Juror No. 196 had served on a jury in a drunk driving case that resulted in a hung jury, yet the prosecutor accepted the jury as constituted four times after Juror No. 196 was seated. Juror No. 28 had served on a jury in a civil case regarding a contract dispute that resulted in a hung jury, yet the prosecutor accepted the jury as constituted seven times after Juror No. 28 was called. A third seated juror, No. 94, had served on two previous juries, one of which had resulted in a hung jury, yet the prosecutor accepted the jury as constituted seven times after Juror No. 94 was seated. The prosecutor’s “absolute policy,” it turns out, was not absolute at all.
My point is not that the trial court should have had the clairvoyance to know, at the time the Batson motion was made, that the prosecutor’s stated reason would later turn out to be false. Rather, I mention what happened in this case as a cautionary tale with respect to crediting broad assertions of “absolute policy” in the nuanced and individualized process of exercising peremptory strikes. Inquiry by a trial court, as opposed to an unexplained ruling, may help elicit relevant elaboration, qualifications, or assurances that *109 permit a reasoned judicial evaluation of the credibility of such assertions as a basis for a peremptory strike.
In addition to the reservations above, I agree with Justice Werdegar that the evidence was insufficient to convict defendant of aggravated mayhem. In all other respects, I join the court’s opinion.
Appellant’s petition for a rehearing was denied January 21, 2014. Werdegar, J., was of the opinion that the petition should be granted.